**In re LBH ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 87–5–2207.**

United States Bankruptcy Court,
D. Maryland.

Oct. 31, 1989.

Irving E. Walker, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for debtor.

David F. Albright, Richard M. Kremen, Katharine M. Ebersberger, Semmes, Bowen & Semmes, Baltimore, Md., for Quality Inns & Affiliates, Objectors.

## MEMORANDUM OPINION OVERRULING OBJECTION TO APPLICATION OF DEBTOR'S COUNSEL FOR FINAL COMPENSATION

JAMES F. SCHNEIDER, Bankruptcy Judge.

Quality Inns and its affiliates ["Quality"] filed the instant objection [P. 559] to the application for final compensation [P. 553] filed by Frank, Bernstein, Conaway & Goldman ["Frank, Bernstein"] as counsel to the debtor. The objection will be overruled and the application will be allowed in its entirety.

The debtor and Quality are natural enemies. They endured an unhappy relationship during the life of franchise and management agreements when Quality was operating the debtor's newly-renovated Lord Baltimore Hotel ["Hotel"] in Baltimore, Maryland. Among the reasons behind the filing of the instant Chapter 11 petition was the debtor's desire to be rid of Quality's management contract, which this Court authorized. On the day the petition was filed, the debtor ousted the Quality management from the hotel premises. Thereafter, Quality became the debtor's nemesis, availing itself of every opportunity to erect obstacles in the debtor's progress toward confirmation of a plan. Even after confirmation was granted, Quality has continued to pursue litigation with a vengeance, both in this Court and on appeal in the district court. Counsel for the debtor describes the litigation between the debtor and Quality as "intense and bitter." To this the Court adds that it was also dogged and perverse. The unstated plan of Quality from beginning to end seems to have been the debtor's destruction, without regard to Quality's own injury and expense. It is in light of this history that the Court views this objection of Quality Inns to the application of debtor's counsel for compensation.

Quality objects to the amount of compensation requested ($470,209.50) for services rendered from March 1, 1988 through December 9, 1988, complains that the case was not economically staffed and that the work performed was excessive, duplicative and unnecessary. However, the very reason the fee is so high was Quality's implacable opposition to every attempt to reorganize undertaken by the debtor. For this reason, the objection is hypocritical and not made in good faith. Having spent a fortune trying to litigate this debtor to death, Quality now speaks piously of conserving the assets of the estate. Quality quibbles over the number of office conferences disclosed by debtor's counsel in its time records, but Quality is not required to disclose its own records of time spent litigating in this case. Quality's economic superiority has enabled it to initiate excessive and seemingly limitless conflict with the debtor. Under these circumstances, Quality is estopped from objecting to the size of a fee which its own conduct has materially increased. This is a court of equity and Quality does not appear before it with clean hands.

Nevertheless, even in the absence of objection, the bankruptcy court is required to make an independent inquiry as to the

reasonableness of fees requested by debtor's counsel. *See In re Inslaw*, 106 B.R. 331 (Bankr.D.C.1989). The reasonableness of such a fee request is to be measured against the following standards articulated in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–719 (5th Cir.1974), expressly adopted by the Fourth Circuit U.S. Court of Appeals in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.1978), *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir.1981) and *Harman v. Levin*, 772 F.2d 1150 (4th Cir.1985):

1. The time and labor required;
2. The novelty and difficulty of the questions;
3. The skill requisite to perform the legal service properly;
4. The preclusion of other employment by the attorney due to the acceptance of the case;
5. The customary fee;
6. Whether the fee is fixed or contingent;
7. The time limitations imposed by the client or circumstances;
8. The amount involved and the results obtained;
9. The experience, reputation, and ability of the attorney;
10. The "undesirability" of the case;
11. The nature and length of the professional relationship with the client; and
12. Awards in similar cases.

■ *The time and labor required.* The fee application sets forth the following enumeration of time expended in this case by attorneys, paralegals and law clerks between March 1, 1988 and December 9, 1988:

| Name | Position | No. of Hours | Average Hourly Rate |
|---|---|---|---|
| Harvey M. Lebowitz | Partner | 468.0 | 222.35 |
| James C. Oliver | Partner | 11.8 | 160.00 |
| Irving E. Walker | Partner | 826.3 | 157.50 |
| Neal Serotte | Partner | 50.6 | 155.00 |
| Jay A. Shulman | Partner | 165.0 | 152.05 |
| Robert M. Ercole | Partner | 14.2 | 150.00 |
| Julien A. Hecht | Partner | 62.0 | 145.00 |
| Paula Krahn Merkle | Associate | 81.3 | 125.00 |
| James R. Wooton | Associate | 294.7 | 117.30 |
| Joseph A. Guzinski | Associate | 710.1 | 99.94 |
| Joseph M. Bellew | Associate | 16.8 | 95.00 |
| William S. Galkin | Associate | 37.7 | 85.00 |
| Mark H. Berman | Associate | 313.5 | 74.91 |
| Kathleen G. McCruden | Paralegal | 149.4 | 62.48 |
| Laura Glass | Paralegal | 55.3 | 52.50 |
| Patricia L. Adams | Paralegal | 571.8 | 47.27 |
| Karen J. Fry | Paralegal | 132.2 | 45.00 |
| Alan J. Ostfield | Law Clerk | 39.9 | 50.00 |
| Other | | 69.1 | 97.72 |
| Total Hours | | 4069.7 | |

The Court has examined the time records supplied in support of the application and has prepared the following condensation:

| Name | Page No. | Amount Claimed | Time |
|---|---|---|---|
| L. Cohen | 1 | $ 42.00 | .2 |
| R.B. Curran | 1 | 35.00 | .2 |
| Woloszyn | 1 | 70.00 | .4 |

| Name | Page No. | Amount Claimed | Time |
|------|----------|---------------|------|
| Walker | 1 | $ 135.00 | .9 |
| Guzinski | 1 | 351.00 | 3.7 |
| Braymer | 1 | 357.00 | 5.1 |
| Engler | 1–2 | 243.00 | 5.4 |
| Helmlinger | 2 | 63.00 | 1.4 |
| Lebowitz | 3 | 1,197.00 | 5.7 |
| Hoffberg | 3 | 108.00 | .7 |
| McCruden | 3 | 60.00 | 1.0 |
| Lebowitz | 5–10 | 104,715.00 | 454.0 |
| Schwait | 10 | 460.00 | 2.3 |
| Hillman | 10 | 112.00 | .8 |
| Lawler | 10 | 90.00 | .6 |
| Walker | 10–30 | 124,973.00 | 787.0 |
| J.G. Cohen | 30 | 67.50 | .9 |
| Buchsbaum | 30 | 598.50 | 6.3 |
| Hecht | 30–32 | 8,990.00 | 62.0 |
| Pasquier | 32 | 12.50 | .1 |
| Oliver | 32 | 1,888.00 | 11.8 |
| Plye | 32 | 572.00 | 4.4 |
| Merkle | 32–34 | 10,162.50 | 81.3 |
| Oestreicher | 34 | 737.50 | 5.9 |
| Gevarter | 34 | 34.00 | .3 |
| Shulman | 34–36 | 24,637.50 | 155.1 |
| Stello | 36 | 272.00 | 2.3 |
| Galkin | 36 | 3,204.50 | 37.7 |
| Guzinski | 36–55 | 69,338.00 | 701.6 |
| Rommel | 55 | 26.00 | .2 |
| Wooton | 55–59 | 35,491.50 | 286.8 |
| Bellew | 59 | 1,610.00 | 16.8 |
| Himmelrich | 59 | 40.00 | .5 |
| Schneider | 59 | 675.00 | 5.4 |
| DiBacco | 59 | 15.00 | .3 |
| Fry | 59–63 | 5,499.00 | 122.2 |
| Thompson | 63 | 76.50 | 1.7 |
| Kennedy | 63 | 6.50 | .1 |
| McCruden | 63–65 | 9,646.00 | 148.5 |
| Antalek | 65 | 141.00 | 1.5 |
| Myers | 65 | 13.50 | .3 |
| Adams | 65–76 | 26,392.50 | 554.6 |
| Margolies | 76 | 212.50 | 2.5 |
| Berman | 76–81 | 24,225.00 | 307.8 |
| Ward | 81 | 21.00 | .3 |
| Helmlinger | 81 | 15.00 | .3 |
| Hutchinson | 81–82 | 375.00 | 7.5 |
| Ostfield | 82 | 1,995.00 | 39.9 |
| Ercole | 82–83 | 2,010.00 | 14.2 |
| Robinson | 83 | 62.50 | .5 |
| L. Cohen | 92 | 42.00 | .2 |
| Rockman | 92 | 790.50 | 5.1 |
| Serotte | 92–95 | 7,713.00 | 50.6 |
| Berger | 95 | 10.00 | .1 |
| Walker | 95 | 150.00 | 1.0 |
| Gladue | 95 | 441.00 | 4.9 |
| Guzinski | 95 | 57.00 | .6 |
| Pivec | 95 | 494.50 | 4.3 |
| L. Glass | 95–96 | 2,783.50 | 55.3 |
| Lebowitz | 98 | 1,793.00 | 8.3 |
| Walker | 98–100 | 5,731.50 | 37.8 |
| Shulman | 100–101 | 1,435.50 | 9.9 |
| Guzinski | 101 | 408.50 | 4.3 |
| Wooton | 101 | 869.00 | 7.9 |

| Name | Page No. | Amount Claimed | Time |
|------|----------|----------------|------|
| Himmelrich | 101 | $ 120.00 | 1.5 |
| Fry | 101 | 450.00 | 10.0 |
| McCruden | 101 | 6.00 | .1 |
| Adams | 101–102 | 688.00 | 17.2 |
| Berman | 102 | 399.00 | 5.7 |
| TOTALS | | $486,456.00 | 4,075.81 |

In addition, the time records set forth various expenditures made by the law firm:

| Page No. | Amount |
|----------|--------|
| 3–4 | $ 132.64 |
| 83–91 | 44,042.17 |
| 96–97 | 77.25 |
| 102–103 | 2,460.24 |
| TOTAL | $46,712.30 |

Frank, Bernstein is claiming compensation in the amount of $470,209.50 and reimbursement for out of pocket expenses in the amount of $46,388.83.

The fees requested are allocated as follows:

| | | | |
|---|---|---|---|
| Irving E. Walker | Partner | 826.3 | $130,989.50 |
| Harvey M. Lebowitz | Partner | 468.0 | 107.705.00 |
| Joseph A. Guzinski | Associate | 710.0 | 70,154.50 |
| Mark H. Berman | Associate | 313.5 | 24,624.00 |
| James R. Wooton | Associate | 294.7 | 36,360.50 |
| Jay R. Shulman | Partner | 165.0 | 26,073.00 |
| Paula K. Merkle | Associate | 81.3 | 10,162.50 |
| Julien A. Hecht | Partner | 62.0 | 8,990.00 |
| Neal Serotte | Partner | 50.6 | 7,713.00 |
| William S. Galkin | Associate | 37.7 | 3,204.50 |
| Joseph M. Bellew | Associate | 16.8 | 1,610.00 |
| Robert M. Ercole | Partner | 14.2 | 2,010.00 |
| James C. Oliver | Partner | 11.8 | 1,888.00 |
| | Sub–Total | | $431,484.50 |
| Patricia L. Adams | Paralegal | 571.8 | $ 27,080.50 |
| Kathleen M. McCruden | Paralegal | 149.4 | 9,712.00 |
| Karen J. Fry | Paralegal | 132.2 | 5,949.00 |
| Laura Glass | Paralegal | 55.3 | 2,783.50 |
| Alan J. Ostfield | Law Clerk | 39.9 | 1,995.00 |
| | Sub–Total | | $ 47,520.00 |

The Court notes from its exhaustive examination of the time records that the designation "Other" includes both paralegals and partners, which is somewhat confusing. In order to determine the amount of time expended and the fee charged by each individual, the Court has prepared the following list:

"OTHER"

| | | |
|---|---|---|
| Hutchinson | 7.5 | 375.00 |
| Buchsbaum | 6.3 | 598.50 |
| Ostreicher | 5.9 | 737.50 |
| Schneider | 5.4 | 675.00 |
| Engler | 5.4 | 243.00 |
| Rockman | 5.1 | 790.50 |
| Braymer | 5.1 | 357.00 |
| Gladue | 4.9 | 441.00 |
| Plye | 4.4 | 572.00 |
| Pivec | 4.3 | 494.50 |
| Margolies | 2.5 | 212.50 |
| Schwait (Partner) | 2.3 | 460.00 |
| Stello | 2.3 | 272.00 |
| Himmelrich | 2.0 | 160.00 |
| Helmlinger | 1.7 | 78.00 |
| Thompson | 1.7 | 76.50 |

"OTHER"

| | | |
|---|---|---|
| Antalek | 1.5 | 141.00 |
| J.G. Cohen | .9 | 67.50 |
| Hillman | .8 | 112.00 |
| Hoffberg | .7 | 108.00 |
| Lawler | .6 | 90.00 |
| Robinson | .5 | 62.50 |
| Woloscyn | .4 | 70.00 |
| L. Cohen (Partner) | .4 | 84.00 |
| Gevarter | .3 | 34.00 |
| Ward | .3 | 21.00 |
| Myers | .3 | 13.50 |
| DiBacco | .3 | 15.00 |
| R.B. Curran | .2 | 35.00 |
| Rommel | .2 | 26.00 |
| Pasquier | .1 | 12.50 |
| Kennedy | .1 | 6.50 |
| Berger | .1 | 10.00 |

Sub–Total $ 7,451.50

TOTAL COMPENSATION $486,456.00

The Court has determined that $486.456 is the "lodestar" or base fee upon which to begin an analysis of the proper fee to be awarded in this case. This is because the Court has concluded that the amount of time expended was reasonable, based both upon its evaluation of the time records and its thorough familiarity with this case. An incredible amount of work was required of counsel because of Quality's challenges and those of the debtor's limited partner, Historic Lord Baltimore Associates Limited Partnership. There were additional problems due to the complexity of the debtor's financial structure. Negotiations toward the formulation of a plan were rendered more difficult and time-consuming because of the existence of five secured creditors, among which were Mayor and City Council of Baltimore, Federal Deposit Insurance Corporation ["F.D.I.C."] and Quality Inns.

■ All of the services performed by counsel were highly beneficial to the debtor and were necessary to its successful reorganization. The application summarized those services performed during the period in question as follows:

"(i) Counsel prepared and filed an application to employ a public relations agent for the Hotel.

"(ii) Counsel negotiated with FDIC, prepared and filed an Amended Stipulation and Order of Dismissal with Prejudice of Motion to Extend Stay to Prohibit Draw under Letter of Credit, which was approved by the Court on April 15, 1988. Under that Stipulation and Order, FDIC agreed to limit its draw under a letter of credit to $780,-000, rather than the full amount of $2,000,-000, and to defer any debt service or future draws under the letter of credit until November 1, 1988. This arrangement gave LBH a reasonable opportunity to formulate a plan of reorganization before facing the burden of debt service to the first lienholder, whose claim is overwhelmingly the largest claim in the case. Counsel also prepared and issued to creditors a notice of the Stipulation and Order.

"(iii) Counsel prepared and filed on April 16, 1988, its First Application, requesting an interim allowance of compensation for services rendered and expenses incurred through February 28, 1988. Counsel reviewed the objections to the First Application filed by Quality Inns and Historic.

"(iv) Counsel reviewed and filed all of the monthly Chapter 11 reports for the Final Application Period.

"(v) Counsel prepared and filed on May 4, 1988 an application to employ a property tax consultant, to assist LBH in obtaining a reduction of its personal property tax bill.

"(vi) Counsel filed an application to employ Weinberg and Green as special counsel for certain limited nonbankruptcy matters with which that firm was familiar due to is prepetition representation of LBH.

"(vii) Counsel prepared and filed the First Application of Hospitality Valuation Services, Inc. for allowance of interim compensation for services rendered and expenses incurred as LBH's valuation expert, and prepared and issued a notice to creditors of that application.

"(viii) Counsel participated with LBH in extensive negotiations with Carlson Hospitality Group, Inc. for a new Radisson Plaza franchise agreement, under which the Hotel became part of the national and international collection of Radisson Hotels. Counsel prepared and filed with the Court on May 27, 1988 an application for approval of the License Agreement with Carlson Hospitality Group, Inc. (Radisson), and prepared and issued to creditors a notice of that

application. Quality Inns and Historic filed objections to the proposed License Agreement, which Counsel reviewed. At the hearing on those objections held on June 21, 1989, Counsel represented LBH and obtained approval of the new License Agreement.

"(ix) Counsel prepared and filed a second application for interim allowance of compensation for George W. Cox & Associates, and prepared and issued a notice of that application to creditors.

"(x) When the confirmation hearing was not concluded within the scheduled time and LBH's expected plan funding consequently was delayed, Counsel prepared and filed an emergency motion to authorize LBH to obtain unsecured credit from Saul Perlmutter, which the Court granted after notice and a hearing.

"(xi) When the confirmation hearing extended beyond the dates scheduled for the hearing, Counsel negotiated with Counsel for FDIC to forebear from requiring debt service until after the conclusion of the confirmation hearing. After reaching a letter agreement with FDIC, Counsel prepared and filed an emergency application to authorize LBH to enter into the letter agreement with FDIC. After notice and a hearing, the Court approved that Application.

"(xii) Counsel prepared and filed a third application for interim allowance of compensation for George W. Cox & Associates, and prepared and issued a notice to creditors of that application.

"(xiii) Counsel prepared and filed the appellee's designation of additional items to be included in the record on appeal from the Court's Order approving LBH's new management contract with Hospitality Group of Lord Baltimore, Inc., a subsidiary of Brookshire Hotels, Inc.

"(xiv) Counsel prepared a response to LBH's audit inquiry in connection with the accountant's preparation of the 1987 financial statements.

"(xv) Counsel also devoted substantial time to a wide variety of matters relating to the administration of the Chapter 11 estate and the operation of the Hotel, including:

(i) review and analysis of periodic Hotel financial and statistical reports;

(ii) review and analysis of all pleadings and papers filed or served in this case by other parties, which when combined with LBH's own filings totalled 324 papers filed with the Court during the Final Application period; and

(iii) Counsel engaged in numerous telephone discussions, meetings, and correspondence with Saul Perlmutter, LBH's managing general partner, and with creditors, in regard to all aspects of LBH's Chapter 11 case and matters relating to the operation of the Hotel.

*"Litigation with Quality Inns*

"(xvi) In the First Application Period, Counsel succeeded in obtaining Court approval of LBH's termination of its management contract with Quality Hotels & Resorts, Inc. and franchise agreement with Quality Inns International, Inc. The successful resolution of those matters allowed LBH and the estate to avoid being subjected to a $16 million claim which Quality Inns attempted to assert based on damages that allegedly would have resulted from a rejection and breach of the Quality Inns' contracts under 11 U.S.C. § 365 rather than termination of the contracts in accordance with their terms. During the Final Application period, Counsel filed a memorandum of law in opposition to Quality Inns' motion for reconsideration of the Court's Order approving the termination of the contracts and reviewed Quality Inns' reply memorandum. The Court ultimately denied Quality Inns' motions for reconsideration.

"(xvii) During the First Application period, Counsel succeeded in obtaining Court approval of LBH's interim postpetition financing from Sharon Savings Bank, F.S.B. ("Sharon"), in the amount of $300,000. In the Final Application period, Quality Inns filed a motion requesting the Court to reconsider that Order. Counsel filed a memorandum of law opposing that motion for reconsideration and reviewed Quality Inns'

reply memorandum. The Court ultimately denied Quality Inns' motion.

"(xviii) Counsel reviewed Quality Inns' objection to the first application of LBH's accountants, George W. Cox & Associates, for an interim allowance of compensation.

"(xix) Counsel reviewed Quality Inns' objection to Counsel's First Application, and prepared a memorandum of law in connection with a discovery dispute arising out of that contested matter. Counsel also filed a response to Quality Inns' objection.

"(xx) In June 1988, after LBH had moved for an extension of its exclusive period to file a plan and obtain plan acceptances, Quality Inns filed its own proposed plan and disclosure statement. Counsel responded by filing a motion to strike Quality Inns' disclosure statement and plan and requesting an emergency hearing. Counsel reviewed Quality Inns' memorandum in opposition to LBH's motion to strike. At the hearing held on this matter on July 5, 1988, Counsel represented LBH and succeeded in obtaining Court approval of LBH's motion to strike, which effectuated the Court's granting LBH an extension of its exclusive period for filing a plan and obtaining plan acceptance.

"(xxi) After Quality Inns filed an appeal from the Order granting LBH's motion to strike, Counsel reviewed Quality Inns' designation of items for inclusion in the record on appeal and statement of issues, and prepared and filed appellee's designation of additional items for the record. Counsel also prepared and filed a memorandum in opposition to Quality Inns' motion for a stay pending appeal.

*"Labor Matters*

"(xxii) Counsel represented the Hotel in negotiations with the National Labor Relations Board with respect to an unfair labor practice charge filed against the Hotel's former management company (an affiliate of Quality Inns). As a result of those negotiations, the case was closed after certain mailings were made to Hotel employees.

"(xxiii) Counsel gave advice to the Hotel management company in connection with various labor matters, including the discharge of certain employees, in order to ensure compliance with applicable labor laws.

"(xxiv) Counsel represented the Hotel in connection with a discrimination charge, filed with the Community Relations Commission ("CRC") and the Equal Employment Opportunity Commission ("EEOC"), that the Hotel's failure to hire the claimant was unlawful. Counsel had several meetings and discussions with the management company, conducted an investigation, and prepared and presented a position paper to the CRC. After a fact-finding conference, the CRC issued a written finding that there was no probable cause for the charge.

"(xxv) Counsel represented the Hotel in connection with an employee's charge filed with the EEOC that her demotion and pay reduction was discriminatory. Counsel conducted an investigation and prepared and submitted to the CRC a position paper.

"(xxvi) Counsel represented the Hotel in connection with an employee's charge filed with the CRC that the Hotel's failure to promote the employee was discriminatory. Counsel conducted an investigation and prepared and submitted to the CRC a position paper. The employee later withdrew his charge before the CRC, although there is still pending a similar claim before the EEOC.

"(xxvii) At various times, the Hotel management company consulted with counsel on various issues concerning employee discipline and other personnel actions under consideration. These meetings and discussions enabled the Hotel to avoid potential litigation.

*"Confirmation of LBH's Chapter 11 Plan and Related Matters*

"(xxviii) On May 25, 1988, Counsel filed LBH's initial plan of reorganization. In preparing this plan, Counsel worked with LBH's accountant, George W. Cox & Associates, and the key executives of the hotel management company to structure a plan based upon the management company's forecast of the Hotel's future performance and cash flow.

"(xxix) Counsel prepared and filed on July 5, 1988 LBH's proposed disclosure statement.

"(xxx) After Quality Inns filed a motion for examination of the hotel management company under Rule 2004, Counsel prepared and filed a memorandum opposing that motion, and based on that opposition, Quality Inns' motion was denied.

"(xxxi) After Quality Inns and Historic objected to LBH's proposed disclosure statement, Counsel revised the disclosure statement and plan and represented LBH at the hearing on this matter, at which the Court overruled the objections and approved the amended disclosure statement.

"(xxxii) Quality Inns and Historic filed objections to confirmation of LBH's amended plan, which Counsel reviewed. These objections precipitated a series of discovery matters by LBH and the objectors, including six depositions taken by Quality Inns or Historic, which Counsel defended, and two depositions taken by Counsel, all in a two-week period prior to the confirmation hearing. There were also extensive document requests and interrogatories by LBH and the objectors. These discovery requests spawned discovery disputes, in connection with which Counsel was required to prepare and file various objections, review affidavits, motions to compel, and a motion for a protective order. These discovery disputes ultimately were resolved by a scheduling conference, which Counsel had requested by motion, and a resulting scheduling Order. Counsel also engaged in discussions with the objectors' counsel in connection with the scheduling of discovery, particularly the depositions. The case record reflects the volume of discovery matters relating to confirmation. *See* Paper Nos. 317–420.

"(xxxiii) Counsel prepared and filed objections to the disputed claims of Quality Inns and Historic.

"(xxxiv) After the mailing of the Court-approved disclosure statement, Counsel engaged in very extensive and complex negotiations with FDIC and the City in an attempt to formulate plan terms acceptable to FDIC and the City, who together hold claims exceeding $25 million secured by liens on the Hotel. To assist LBH and Counsel in this endeavor, as well as in the confirmation proceedings, Counsel prepared and filed an application to employ Dr. Robert Edmister, an expert in financing and interest rate matters, to advise LBH in connection with the terms of the plan relating to the payment of the FDIC and the City's claims, as well as the secured claim of Quality Inns. The negotiations with these secured creditors required the parties to construct a delicate balance between the debt service and adequate protection requirements requested by the secured creditors and the capacity of the Hotel as forecasted by the management company to generate sufficient cash flow to fulfill the debt service requirements, all while meeting the stringent requirements for confirmation under the cram-down provisions of 11 U.S.C. § 1129(b).

"(xxxv) As a result of LBH's and Counsel's negotiations with FDIC and the City, LBH succeeded in obtaining the consent and acceptance of FDIC and the City to a Third Amended Plan of Reorganization, which was completed and filed with the Court on October 21, 1988. It was this plan which the Court ultimately confirmed.

"(xxxvi) Counsel prepared and filed a prehearing memorandum in support of confirmation of LBH's plan."

Application, pp. 4–13.

*Novelty and difficulty of the questions.* This is one of the most difficult Chapter 11 reorganization cases ever filed in this district, both from the standpoint of the large secured debt in the amount of $30 million and the unyielding opposition from the opponents of confirmation necessitating the application of cram-down provisions of the Bankruptcy Code. The hearing on confirmation required a record 12 days and spanned more than a month (October 24–27, November 1–3, 22–23, 30, December 1, 5, 1988).

*The skill requisite to perform the legal service properly.* The instant case demanded the highest degree of skill in light of the various problems facing the debtor.

In the opinion of the Court, counsel admirably performed its services to the debtor according to the highest standards of the legal profession.

*The preclusion of other employment by the attorney due to the acceptance of the case.* "The demands of this case required LBH's lead attorney, Irving E. Walker, to devote approximately one half of his time during the past year to rendering services to LBH, necessarily requiring Counsel to restructure the priorities given to other matters and diverting substantial time from other cases. During the confirmation hearing and immediately prior to that hearing, other members of Counsel's bankruptcy department devoted much of their time to meet the demands of this case, requiring them to restructure the priorities given to other matters, and to divert substantial time from other cases." Application, p. 16.

*The customary fee.* The rates charged by Frank, Bernstein in this case represent its customary charges. The Court notes that counsel has exercised good "billing judgment" in writing off approximately $16,000 in legal fees.

*Whether the fee is fixed or contingent.* Counsel may have believed that its fee was fixed and not contingent, but the risk factor in this case compels the conclusion that the fee is contingent.

*Time limitations imposed by the client or circumstances.* The circumstances of this case required counsel to act expeditiously on the client's behalf to achieve confirmation of the Chapter 11 plan and the rehabilitation of the Hotel.

*The amount involved and the results obtained.* "The amounts involved in this case are significant. The fair market value of the Hotel, as of November 1988, is $30 million, and the claims of creditors in the aggregate exceed that amount. Counsel's efforts have enabled LBH to achieve confirmation of a Chapter 11 plan which received the overwhelming support of LBH's secured and unsecured creditors, notwithstanding the strenuous objections of the only two objectors, Quality and Historic." Application, p. 17.

*The experience, reputation and ability of the attorney.* Frank, Bernstein is a well-respected law firm with an excellent bankruptcy department. It produces work of consistently high quality and its attorneys who appear before this Court are capable, prepared and highly respected. Irving E. Walker, lead bankruptcy counsel in this case, is held in the highest esteem by this Court, as is Harvey M. Lebowitz, who chairs the bankruptcy department at the firm. Even they were hard pressed to maintain their self-control at times during this stressful case.

*The "undesirability" of this case. This has been the most difficult and unpleasant case within the memory of this Court.*

*The nature and length of the professional relationship with the client.* There is no more vital relationship in the bankruptcy court than that between debtor and debtor's counsel. The Court recognizes the absolute necessity of adequately compensating attorneys who undertake debtor representation to insure proper protection for debtors and more importantly to promote an efficient bankruptcy system.

*Awards in similar cases.* The amount claimed by Frank, Bernstein as final compensation in the instant case is greater than that paid in similar cases before this Court, but is justified under the very unique circumstances of this case.

*Out of pocket expenses.* A case has been made by counsel for the reimbursement of out of pocket expenses as reasonably necessary to the successful prosecution of this case. They will be allowed in the following amounts, as requested:

| | |
|---|---|
| Copying | $24,536.45 |
| Telephone | 973.88 |
| Heavy postage | 127.88 |
| Telecopies | 1,152.00 |
| Federal Express and DHL | 769.44 |
| Courier and Messenger Services | 1,696.00 |
| Secretarial Overtime | 2,738.76 |
| Travel, lodging, and related expenses | 869.30 |
| Local travel (taxicabs, mileage, & parking) | 359.00 |
| Deposition and Hearing Transcripts | 9,891.62 |
| Westlaw & Lexis Computer Research Chgs. | 2,236.86 |
| Witness Fees | 244.50 |

| | |
|---|---|
| Service of Process | $ 44.00 |
| Filing Fees | 20.00 |
| Special Copying Charges (Downtown Press, Curry Copy Center) | 753.94 |
| Miscellaneous expense credits | (24.80) |
| Total Expenses | $46,388.83 |

*Cf. In re The Leonard Jed Company*, 103 B.R. 706 (Bankr.D.Md.1989) (where many of similar charges were disallowed for failure of the same counsel to demonstrate their necessity).

The lodestar factors require the granting of the fee and expenses in the amounts requested.

ORDER ACCORDINGLY.

## ORDER OVERRULING OBJECTION TO APPLICATION OF DEBTOR'S COUNSEL FOR FINAL COMPENSATION

Based upon the foregoing Memorandum Opinion entered simultaneously herewith, the objection of Quality Inns and its affiliates to the application for final compensation filed by Frank, Bernstein, Conaway & Goldman is hereby OVERRULED. Compensation in the amount of $470,209.50 and expenses in the amount of $46,388.83 will be ALLOWED.

IT IS SO ORDERED.